MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lyons, CA State Bar No. 202284
michael.lyons@morganlewis.com
Jason E. Gettleman, CA State Bar No. 269733
jason.gettleman@morganlewis.com
Jacob J.O. Minne, CA State Bar No. 294570
jacob.minne@morganlewis.com
Karon N. Fowler, CA State Bar No. 308145
karon.fowler@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:     +1.650.843.4001

SIMPSON THACHER & BARTLETT LLP
Jeffrey E. Ostrow, Bar No. 213118
jostrow@stblaw.com
2475 Hanover Street
Palo Alto, CA 94304
Tel: +1.650.251.5000
Fax: +1.650.251.5002

Attorneys for Plaintiff
HITACHI KOKUSAI ELECTRIC INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HITACHI KOKUSAI ELECTRIC INC., a Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ASM INTERNATIONAL, N.V., a Netherlands corporation, and ASM AMERICA, INC., a Delaware corporation,<br><br>Defendants. | Case No. 5:17-cv-6880-BLF<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hitachi Kokusai Electric Inc. ("Plaintiff" or "HiKE") for its complaint against Defendants ASM America, Inc. and ASM International, N.V. ("Defendants," "ASM Defendants" or "ASM"), hereby alleges as follows:

**PARTIES**

1.      HiKE is a corporation organized and existing under the laws of Japan with its principal place of business in Tokyo, Japan.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

2.    Defendant ASM International, N.V. is a corporation organized and existing under the laws of the Netherlands with its principal place of business at Versterkerstraat 8, 1332 AP Almere, Netherlands.

3.    Defendant ASM America, Inc. is a Delaware corporation, with its principal place of business at 3340 East University Drive, Phoenix, AZ 85034, and qualified to do business in the State of California, with an office located at 97 East Brokaw Road, Suite 100, San Jose, California, 95112.  On information and belief, Defendant ASM America, Inc. is a wholly-owned subsidiary of ASM International, N.V.

4.    On information and belief, Defendants jointly make, use, sell, offer for sale or import certain semiconductor process equipment for wafer processing, including the Pulsar XP ALD system, EmerALD XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, A412 batch vertical furnace system, Intrepid XP epitaxy system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products (the "Accused Products").

TECHNOLOGY – PRODUCT MATRIX

| DEPOSITION APPLICATION | ASMI PRODUCT PLATFORM | ASMI PRODUCTS | PROCESS APPLICATION |
|---|---|---|---|
| ALD | XP1 | Pulsar XP ALD system<br>EmerALD XP ALD system | High-k gate dielectric<br>Metal gate electrode |
| PEALD | XP81 | Eagle XP8 PEALD system | Spacer for multipatterning<br>Gate spacer<br>Etch stop |
| PECVD | XP81 | Dragon XP8 PECVD system | Inter-layer dielectric<br>Silicon nitride |
| Diffusion<br>Oxidation<br>LPCVD<br>ALD | Advance Series | A400 batch vertical furnace system<br>A412 batch vertical furnace system | Furnace:<br>- Diffusion, oxidation<br>- Polysilicon<br>- Silicon nitride |
| Epitaxy | XP1 | Intrepid XP epitaxy | Silicon channel<br>Strain layer |
| | Epsilon | Epsilon 2000 single wafer epitaxy system<br>Epsilon 3200 single wafer epitaxy system | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

ASM, *Technology – Product Matrix*, http://www.asm.com/solutions/products (last visited Feb. 15, 2018). Each of the accused products has been sold, offered for sale, or imported into the United States by ASM. For example, on information and belief, at least the Pulsar XP ALD system, EmerALD XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, A412 batch vertical furnace system, Intrepid XP epitaxy system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products have been sold to end users in the United States.

5.     Defendants' actions have caused HiKE harm, and will cause further harm to HiKE if Defendants' actions continue. In addition, Defendants' knowing acts of infringement will frustrate HiKE's continued, strong business relationships, contracts, and potential contracts, with resulting lost sales and profits, and otherwise are or will case substantial harm to HiKE's business.

6.     As a result of Defendants' actions, HiKE brings this lawsuit to protect its patented innovation and its reputation as the world-wide leader in the semiconductor manufacturing system industry.

## JURISDICTION AND VENUE

7.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1138(a).

8.     On information and belief, Defendants are subject to the personal jurisdiction of this Court because they are doing and have done substantial business in this District, including business relating to the sale and distribution of the Accused Products. Defendants have continuous and systematic business contacts with the State of California and either directly or through subsidiaries and intermediaries conduct business in California by shipping, distributing, offering for sale, selling, advertising (including the provision of an interactive web page—*e.g.*, http://www.asm.com/solutions/products) the Accused Products in the State of California and the Northern District of California. Defendants also directly or through their subsidiaries and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

intermediaries conduct business in California through their sales and service office located at 97 East Brokaw Road, Suite 100, San Jose, California, 95112. Defendants directly or through their subsidiaries and intermediaries have purposefully and voluntarily placed the Accused Products into the stream of commerce with the intention and expectation that the Accused Products will be purchased and used by customers in the Northern District of California. Therefore, the exercise of jurisdiction over Defendants is proper under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), 1391(c), and/or 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District and have committed acts of infringement in this District.

**INTRADISTRICT ASSIGNMENT**

10. Pursuant to Local Rules 3-2(c) and (e), Intellectual Property Actions are assigned on a district-wide basis. Further, a substantial part of the events giving rise to the claims alleged in this Complaint occurred and are occurring in the city of San Jose, CA and the county of Santa Clara because ASM America, Inc.'s sales and service office is located in San Jose, CA.

**BACKGROUND**

11. HiKE is a world leader in the design, manufacture, installation, and maintenance of batch and single wafer semiconductor manufacturing systems and equipment.

12. HiKE is recognized as a pioneer in the field of thermal processing technology for semiconductor wafers, and HiKE furnaces are found in the majority of semiconductor fabrication plants, commonly known as "fabs," around the world.

13. To continually improve its product offerings for its customers, HiKE invests substantial resources in research and development of semiconductor manufacturing systems, including the development of products having improved fabrication processing time, having improved productivity, and resulting in product of superior quality. Over the years, HiKE has received accolades for its role as an innovative leader in this field of technology and has received numerous seminal and valuable patents for its inventions. HiKE relies upon its patents to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

maintain its reputation as a leader in semiconductor manufacturing systems technology and protect its customers from inferior devices that may result in lesser quality processing and production.

14.     HiKE's patents in this field include U.S. Patent Nos. 7,033,937 ("the '937 patent"), 6,576,063 ("the '063 patent"), 7,808,396 ("the '396 patent"), RE43,023 ("the '023 patent"), 6,744,018 ("the '018 patent"), 8,409,988 ("the '988 patent"), and 9,318,316 ("the '316 patent") (collectively, "the Asserted Patents").

**The Patents-in-Suit**

15.     On April 25, 2006, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '937 patent, which is titled "Apparatus and Method for Use in Manufacturing a Semiconductor Device" and attached hereto as Exhibit A.  The '937 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '937 patent, including the right to collect and receive damages for past, present, and future infringement of the '937 patent.

16.     On June 10, 2003, the USPTO duly and legally issued the '063 patent, which is titled "Apparatus and Method for Use in Manufacturing a Semiconductor Device" and attached hereto as Exhibit B.  The '063 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '063 patent, including the right to collect and receive damages for past, present, and future infringement of the '063 patent.

17.     On October 5, 2010, the USPTO duly and legally issued the '396 patent, which is titled "Substrate Processing Apparatus" and attached hereto as Exhibit C.  The '396 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '396 patent, including the right to collect and receive damages for past, present, and future infringement of the '396 patent.

18.     On December 13, 2011, the USPTO duly and legally reissued U.S. Patent No. 6,641,350 as the '023 patent, which is titled "Dual Loading Port Semiconductor Processing Equipment" and attached hereto as Exhibit D.  The '023 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '023 patent, including the right to collect and receive damages for past, present, and future infringement of the '023 patent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

19.     On June 1, 2004, the USPTO duly and legally issued the '018 patent, which is titled "Dual Loading Port Semiconductor Processing Equipment" and attached hereto as Exhibit E.  The '018 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '018 patent, including the right to collect and receive damages for past, present, and future infringement of the '018 patent.

20.     On April 2, 2013, the USPTO duly and legally issued the '988 patent, which is titled "Method of Manufacturing Semiconductor Device and Substrate Processing Apparatus" and attached hereto as Exhibit F.  The '988 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '988 patent, including the right to collect and receive damages for past, present, and future infringement of the '988 patent.

21.     On April 19, 2016, the USPTO duly and legally issued the '316 patent, which is titled "Method of Manufacturing Semiconductor Device, Method of Processing Substrate and Substrate Processing Apparatus for Forming Thin Film Containing at Least Two Different Elements" and attached hereto as Exhibit G.  The '316 patent has been assigned to HiKE.  HiKE holds all right, title, and interest in the '316 patent, including the right to collect and receive damages for past, present, and future infringement of the '316 patent.

## COUNT I

## Infringement of the '937 Patent

22.     HiKE incorporates paragraphs 1-21 above by reference.

23.     The '937 patent relates to a method for use in manufacturing a semiconductor device, and, more particularly, to a method for a reaction chamber wherein a plasma is generated in a plasma source arranged outside a reaction chamber, an active species that is generated by the plasma source is supplied into and removed from the reaction chamber through a port arranged at a side of the reaction chamber and an exhaust port arranged at a substantially opposite side to the supply port where the supply port and exhaust port are positioned substantially at a same level and the active species flows in a substantially horizontal direction from the supply port to the exhaust port.  *See* Ex. A, '937 patent at 3:54-60, claim 10.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

24.    HiKE is the owner, by assignment, of all rights, title and interest in the '937 patent, including the right to recover damages for past infringement.

25.    Defendants have infringed and continue to infringe at least claim 10 of the '937 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the Pulsar XP ALD system.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

26.    For example, the Defendants' Pulsar XP ALD system contains each element of and infringes at least claim 10 of the '937 patent, which recites the following:

10. A method for use in manufacturing a semiconductor device, comprising the

steps of:

(a) generating a plasma in at least one plasma source arranged outside a reaction

chamber, the reaction chamber having therein at least one substrate to be

processed; and

(b) supplying and removing active species generated by the plasma source into and

from the reaction chamber through a supply port arranged at a side of the reaction

chamber and an exhaust port arranged at a substantially opposite side to the supply

port, the supply port and the exhaust port being positioned substantially at a same

level, and the active species flowing in a substantially horizontal direction from the

supply port to the exhaust port.

27.    On information and belief, the use of the Accused Products, including at least Defendants' Pulsar XP ALD system (shown below), to manufacture a semiconductor device infringes at least claim 10 of the '937 patent by generating a plasma in at least one plasma source arranged outside a reaction chamber and the reaction chamber having at least one substrate to be processed.  *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("ALD works by exposing the heated wafer to controlled pulses of process gases."); U.S. Patent Application No. 2017/0062204,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

assigned to ASM IP Holding B.V. and attached hereto as Exhibit H, at para. 0100 ("Exemplary single wafer reactors, designed specifically to enhance PEALD processes, are commercially available from ASM America, Inc. (Phoenix, AZ) under the tradenames Pulsar® 2000 and Pulsar® 3000."). Moreover, "[t]he Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity." *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018)



28. On information and belief, the use of the Accused Products, including at least Defendants' Pulsar XP ALD system, to manufacture a semiconductor device further infringes at least claim 10 of the '937 patent by supplying and removing active species generated by the plasma source into and from the reaction chamber through a supply port arranged at a side of the reaction chamber and an exhaust port arranged at a substantially opposite side to the supply port where the supply port and the exhaust port are positioned substantially at a same level, and the active species flows in a substantially horizontal direction from the supply port to the exhaust port. *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("Cross-flow reactor design with precise laminar gas flow to optimize the ALD pulse delivery which results in excellent film properties, uniformity, purity and throughput").  On information and belief, the "Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity." *Id*.

29.     On information and belief, Defendants have been aware of the '937 patent and its infringement since at least July 10, 2012.

30.     On information and belief, the ASM Defendants indirectly infringe the '937 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to the Pulsar XP ALD system.  At least this system, as provided by Defendants to their customers and used as intended and instructed, infringes the '937 patent.  Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to the Pulsar XP ALD system, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Products, including but not limited to the Pulsar XP ALD system in the United States in a manner that Defendants know to be infringing.

31.     For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Pulsar XP ALD system to customers and intending them to use the Pulsar XP ALD system to practice the claimed method; advertising the Pulsar XP ALD system in the United States to encourage customers to use the patented invention of the '937 patent by operating the Pulsar XP ALD system in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Pulsar XP ALD system for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Pulsar XP ALD system.

32.     More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018).  On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products.  *See id.*  For example, the Pulsar XP ALD product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "an intermediate understanding on operating and maintaining the Pulsar® P3000."  *See* ASM Pulsar® P3000 Part 1/2 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/PulsarXP-P1-P2.pdf (last visited Feb. 15, 2018).

33.     In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least the Pulsar XP ALD system.  These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least the Pulsar XP ALD system, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications.  These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment.  On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least the Pulsar XP ALD system, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation.  On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products at customer sites.  On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

34.     Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs."  *See* ASM Technical

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018).  Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods"  (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018).  Moreover, the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment." *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 15, 2018). The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order." *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018). Further, the ASM Defendants maintain regional sales and service offices in the U.S., including the "Regional Sales/Service Office" located in San Jose, CA, for sale and service of the Accused Products. *See id.* at 176.

35.    On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '937 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to the Pulsar XP ALD system. Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '937 patent.

36.    Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 10 the '937 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

ASM America.  On information and belief, Defendant ASM International directs or controls Defendant ASM America's performance of claimed steps by taking active steps that include, but are not limited to, instructing Defendant ASM American to use the Accused Products, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components.  On information and belief, the benefit to Defendant ASM America is a product to sell to customers for profit, and Defendant ASM International conditions Defendant ASM America's receipt of the product and subsequent sale to customers on taking steps of the claimed method.  On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 10 of the '937 patent since at least July 10, 2012.

37.     On information and belief, Defendant ASM International also contributes to the infringement of at least claim 10 of the '937 patent by Defendant ASM America.  Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts for performing the claimed method in the manner described above.  The Accused Products, components, and related parts are especially adapted for the infringing process, and they have no substantial non-infringing uses.  On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 10 of the '937 patent since at least July 10, 2012.

38.     As a result of Defendants' infringement of the '937 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

39.     Defendants' acts of infringement of the '937 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 10, 2012.  Defendants' acts constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

40.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## COUNT II

### Infringement of the '063 Patent

41.    HiKE incorporates paragraphs 1-40 above by reference.

42.    The '063 patent relates to an apparatus for use in manufacturing a semiconductor device, and, more particularly, to an apparatus for a reaction chamber wherein a plasma is generated in a plasma source arranged outside a reaction chamber, an active species supply port for providing active species generated by the plasma source and arranged at a side of the reaction chamber, an exhaust port at a substantially opposite side to the supply port where the active species flow substantially parallel to the surface of a substrate from an edge in proximity to the active species supply port to another edge in proximity to the exhaust port, where the reaction chamber includes two openings for introducing and removing the active species into and from the reaction chamber, the openings being positioned substantially at a same level, and the active species flow in a substantially horizontal direction from one opening to the other.  *See* Ex. B, '063 patent at 3:54-60, claim 10.

43.    HiKE is the owner, by assignment, of all rights, title and interest in the '063 patent, including the right to recover damages for past infringement.

44.    Defendants have infringed and continue to infringe at least claim 10 of the '063 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Pulsar XP ALD system.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

45.    For example, the Defendants' Pulsar XP ALD system infringes at least claim 10 of the '063 patent, which recites the following:

10. A semiconductor manufacturing apparatus, comprising:

a reaction chamber in which one or more substrates to be processed are disposed;

a plasma source arranged outside of and in proximity to the reaction chamber;

an active species supply port for providing active species generated by the plasma

source to the reaction chamber and arranged at a side of the reaction chamber: and

an exhaust port provided at a substantially opposite side to the active species

supply port,

wherein the active species flow substantially parallel to the surface of each

substrate from an edge in proximity to the active species supply port to another

edge in proximity to the exhaust port and

wherein the reaction chamber includes two openings for introducing and removing

the active species into and from the reaction chamber, the openings being

positioned substantially at a same level, and the active species flow in a

substantially horizontal direction from one opening to the other.

46.    On information and belief, the Defendants' Pulsar XP ALD system (shown below) is a semiconductor manufacturing apparatus that includes a reaction chamber in which one or more substrates are disposed for processing.  *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("ALD works by exposing the heated wafer to controlled pulses of process gases.").  Moreover, "[t]he Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity."  *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

visited Feb. 15, 2018).



47.     On information and belief, the Accused Products, including at least Defendants' Pulsar XP ALD system, include a plasma source arranged outside of and in proximity to the reaction chamber and an active species supply port arranged at a side of the reaction chamber for providing active species generated by the plasma source to the reaction chamber. *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("The Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity."); Ex. H, U.S. Patent Application No. 2017/0062204 at para. 0100 ("Exemplary single wafer reactors, designed specifically to enhance PEALD processes, are commercially available from ASM America, Inc. (Phoenix, AZ) under the tradenames Pulsar® 2000 and Pulsar® 3000.").

48.     On information and belief, the Accused Products, including at least Defendants' Pulsar XP ALD system, include an exhaust port at a substantially opposite side to the active species supply port where the active species flow substantially parallel to the surface of each substrate from an edge in proximity to the active species supply port to another edge in proximity

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

to the exhaust port. *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("Cross-flow reactor design with precise laminar gas flow to optimize the ALD pulse delivery which results in excellent film properties, uniformity, purity and throughput"). On information and belief, the "Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity." *Id.*

49. On information and belief, the Accused Products, including at least Defendants' Pulsar XP ALD system, have a reaction chamber that includes two openings positioned at substantially the same level for introducing and removing the active species into and from the reaction chamber such that the active species flow in a substantially horizontal direction from one opening to the other. *See* Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018) ("Cross-flow reactor design with precise laminar gas flow to optimize the ALD pulse delivery which results in excellent film properties, uniformity, purity and throughput"). On information and belief, the "Pulsar reactor chamber and source delivery system are optimized for precise gas-flow dynamics and minimum purge times that provide advanced process control, film purity and uniformity." *Id.*

50. On information and belief, Defendants have been aware of the '063 patent and its infringement since at least July 10, 2012.

51. On information and belief, the ASM Defendants indirectly infringe the '063 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to the Pulsar XP ALD system. At least this system, as provided by Defendants to their customers and used as intended and instructed, infringes the '063 patent. Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to the Pulsar XP ALD system, and are continuing to do so, to customers with the specific intent to actively encourage them to use at least one or more of the Accused Products, including but not limited to the Pulsar XP ALD system in the United States in a manner that Defendants know to be infringing.

52.     For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Pulsar XP ALD system to customers and intending them to use the Pulsar XP ALD system to practice the claimed method; advertising the Pulsar XP ALD system in the United States to encourage customers to use the patented invention of the '937 patent by operating the Pulsar XP ALD system in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Pulsar XP ALD system for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Pulsar XP ALD system.

53.     More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018).  On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products. *See id.* For example, the Pulsar XP ALD product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "an intermediate understanding on operating and maintaining the Pulsar® P3000." *See* ASM Pulsar® P3000 Part 1/2 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/PulsarXP-P1-P2.pdf (last visited Feb. 15, 2018).

54.     In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least Defendants' Pulsar XP ALD system.  These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' Pulsar XP ALD system, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications.  These communications and visits also include, on information and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment.  On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Defendants' Pulsar XP ALD system, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation.  On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products, including at least Defendants' Pulsar XP ALD system, at customer sites.  On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products, including at least Defendants' Pulsar XP ALD system, being configured to perform and function in a manner that infringes HiKE's asserted patents.

55.   Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs."  *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018).  Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods"  (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

PLAINTIFF HITACHI KOKUSAI ELECTRIC INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018).  Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment."  *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 1, 2018). The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order."  *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018). Further, the ASM Defendants maintain regional sales and service offices in the U.S., including the "Regional Sales/Service Office" located in San Jose, CA, for sale and service of the Accused Products.  *See id.* at 176.

56.     On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '063 patent by making, using, importing, offering for sale,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

and/or selling one or more of the Accused Products, including but not limited to the Pulsar XP ALD system.  Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use.  For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process.  On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '063 patent.

57.    Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 10 the '063 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America.  On information and belief, such active steps include, but are not limited to, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components.  On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 10 of the '063 patent since at least since at least July 10, 2012.

58.    On information and belief, Defendant ASM International also contributes to the infringement of at least claim 10 of the '063 patent by Defendant ASM America.  Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts that comprise the substrate processing apparatus in the manner described above.  The Accused Products, components, and related parts are especially adapted for use in the infringing products, and they

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

have no substantial non-infringing uses.  On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 10 of the '063 patent since at least since at least July 10, 2012.

59.    As a result of Defendants' infringement of the '063 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

60.    Defendants' acts of infringement of the '063 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 10, 2012.  Defendants' acts, constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

61.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## COUNT III

### Infringement of the '396 Patent

62.    HiKE incorporates paragraphs 1-61 above by reference.

63.    The '396 patent relates to a substrate processing apparatus comprising a signal indicator for indicating a running state, comprising a signal indicator operating under any one of a plurality of operation conditions and a display unit for displaying that a cause of the operation is any one of the plural operation conditions during the operation of the signal indicator.  *See* Ex. C, '396 patent at 1:54-65.

64.    HiKE is the owner, by assignment, of all rights, title and interest in the '396 patent, including the right to recover damages for past infringement.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

65.    Defendants have infringed and continue to infringe at least claim 9 of the '396 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the Intrepid XP epitaxy system product.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

66.    For example, the Accused Products, including at least Defendants' Intrepid XP epitaxy system product, contain each element of and infringes at least claim 9 of the '396 patent, which recites the following:

9. A substrate processing apparatus comprising a signal tower and a buzzer as a

plurality of signal indicators for indicating a running state, comprising:

a display unit displaying operation conditions that are set independently and in

advance corresponding to the signal tower and the buzzer, wherein

the display unit sets sound of the buzzer as the operation condition of the signal

tower.

67.    On information and belief, the Accused Products, including at least Defendants' Intrepid XP epitaxy system product (shown below), infringe at least claim 9 of the '396 patent because it is a substrate processing apparatus that includes a signal tower and a buzzer as a plurality of signal indicators for indicating a running state for the Intrepid XP epitaxy system product.  *See* Intrepid XP, ASM, http://www.asm.com/solutions/products/epitaxy-products/intrepid-xp-epitaxy (last visited Feb. 15, 2018).  On information and belief, the signal tower (for example, as depicted below) in Defendants' Intrepid XP epitaxy system product consists of a stack of multicolored lights.  On information and belief, the Intrepid XP epitaxy system Defendants' Intrepid XP epitaxy system product includes a buzzer.  On information and belief, the display unit (for example, as depicted below) in Defendants' Intrepid XP epitaxy system product displays operation conditions that are set independently and in advance that correspond to the signal tower and buzzer.  On information and belief, the display unit (as depicted below) in Defendants' Intrepid XP epitaxy system product sets the sound of the buzzer

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

as the signal tower's operational condition.  *See* Intrepid XP Epitaxy, ASM, http://www.asm.com/solutions/products/epitaxy-products/intrepid-xp-epitaxy (last visited Feb. 15, 2018); *see also* Enabling Advanced Wafer Processing with New Materials, ASM International: Analyst and Investor Technology Seminar at 30 (July 11, 2017), http://www.asm.com/Downloads/20170711%20ASMI%20Investor%20Technology%20Seminar%20presentation%20July%2011%202017%20revREL.pdf (last visited Feb. 15, 2018); Advanced Chip Manufacturing with New Materials, ASM International: Analyst and Investor Technology Seminar at 22 (July 15, 2015), http://www.asm.com/Downloads/2015_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018).



68.    On information and belief, Defendants have been aware of the '396 patent and its infringement since at least July 10, 2012.

69.    On information and belief, the ASM Defendants indirectly infringe the '396 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to the Intrepid XP epitaxy system product.  At least the Accused Products, as provided by Defendants to their customers and used as

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

intended and instructed, infringe the '396 patent.  Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to the Intrepid XP epitaxy system product, and are continuing to do so, to customers with the specific intent to actively encourage them to one or more of the Accused Products, including but not limited to the Intrepid XP epitaxy system product in the United States in a manner that Defendants know to be infringing.

70.     For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Intrepid XP epitaxy system product to customers and intending them to use the Intrepid XP epitaxy system product to practice the claimed method; advertising the Intrepid XP epitaxy system product in the United States to encourage customers to use the patented invention of the '396 patent by operating the Intrepid XP epitaxy system product in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Intrepid XP epitaxy system product for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Intrepid XP epitaxy system product.

71.     More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018).  On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products. *See id.*  For example, on information and belief, ASM has offered to customers a 10-day training course for the Intrepid XP epitaxy system. *See* ASM Intrepid PM Course, https://training2.asm.com/training/trainingbysys.php?product=Intrepid%20PM (last visited Feb. 15, 2018).

72.     In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

sell the Accused Products, including at least Defendants' Intrepid XP epitaxy system product. These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' Intrepid XP epitaxy system products, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications.  These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment. On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Defendants' Intrepid XP epitaxy system products, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation.  On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products, including at least Defendants' Intrepid XP epitaxy system product, at customer sites.  On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

73.     Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs."  *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018).  Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

performance metrics, and sharing equipment and best-known wafer processing methods" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018).  Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment."  *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 15, 2018).  The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order."  *See* ASM 2016 Statutory Annual Report at 98,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

27

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018). Further, the ASM Defendants maintain regional sales and service offices in the U.S., including the "Regional Sales/Service Office" located in San Jose, CA, for sale and service of the Accused Products. *See id.* at 176.

74.     On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '396 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to the Intrepid XP epitaxy system product. Defendants have made and/or sold such products with knowledge that they are products are especially designed for use in a patented system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for the products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '396 patent.

75.     Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 9 of the '396 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America. On information and belief, such active steps include, but are not limited to, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components. On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 9 of the '396 patent since at least July 10, 2012.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

28

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

76.    On information and belief, Defendant ASM International also contributes to the infringement of at least claim 9 of the '396 patent by Defendant ASM America.  Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts that comprise the substrate processing apparatus in the manner described above.  The Accused Products, components, and related parts are especially adapted for use in the infringing products, and they have no substantial non-infringing uses.  On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 9 of the '396 patent since at least July 10, 2012.

77.    As a result of Defendants' infringement of the '396 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

78.    Defendants' acts of infringement of the '396 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 10, 2012.  Defendants' acts constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

79.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## COUNT IV

### Infringement of the '023 Patent

80.    HiKE incorporates paragraphs 1-79 above by reference.

81.    The '023 patent relates to a semiconductor substrate processing equipment and, more particularly, to a device for moving doors of substrate carriers.  *See* Ex. D, '023 patent at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

29

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

1:27-33.

82.     HiKE is the owner, by assignment, of all rights, title and interest in the '023 patent, including the right to recover damages for past infringement.

83.     Defendants have infringed and continue to infringe at least claim 1 the '023 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system.  The ASM Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

84.     For example, on information and belief, the Accused Products, including at least Defendants' A412 batch vertical furnace system, contain each element of and infringes at least claim 1 of the '023 patent, which recites the following:

1. A substrate processing equipment comprising:

at least two pod supporting stages, each for placing thereon a pod for containing substrates therein, the pod having a door;

at least two independently operable pod doors opening mechanisms, each for permitting access to substrates inside the pod placed on a corresponding one of the pod supporting stages; and

wherein each of the pod door opening mechanisms horizontally removes the door from the corresponding pod to thereby allow substrates disposed inside of the corresponding pod to be unloaded therefrom.

85.     On information and belief, the Accused Products, including at least Defendants' A412 (shown below), are substrate processing equipment that include at least two pod supporting stages on which to place a pod for containing substrates where the pod has a door. *See* Advance Vertical Furnace, ASM, http://www.asm.com/solutions/products/low-pressure-chemical-vapor-deposition-and-diffusion-products/advance-vertical-furnace (last visited Feb. 15, 2018).  For example, on information and belief, the A412 is a "batch vertical furnace" that provides for "[v]ertical batch processing" where "a large stack of wafers can be loaded into the furnace

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

30

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

chamber for simultaneous thermal processing." *Id.*

86.     On information and belief, the Accused Products, including at least Defendants' A412, has at least two independently-operable opening mechanisms for pod doors, each of which permits access to substrates inside the pod that is placed on a corresponding one of the pod supporting stages.  For example, on information and belief, Defendants' A412 provides for "dual boat operation" and "[d]ual reactor configuration" that allows for "[s]equential batch processes." *See* Advance Vertical Furnace, ASM, http://www.asm.com/solutions/products/low-pressure-chemical-vapor-deposition-and-diffusion-products/advance-vertical-furnace (last visited Feb. 15, 2018) ("Dual boat operation means the reactor can be fully utilized for maximum throughput as a second boat of wafers is always staged and ready to run once the previous boat has finished").

87.     On information and belief, in Defendants' A412, each of the pod door opening mechanisms horizontally removes the door from the corresponding pod to allow the corresponding pod's substrates to be unloaded from the pod.  For example, on information and belief, as illustrated in the image below, the A412 uses a "[d]ual boat/dual reactor system" with a pod door opening mechanism for horizontally removing the door from the corresponding pod to allow the corresponding pod's substrates to be unloaded from the pod.  *See, e.g.*, Products and Technologies for Advance Wafer Processing, ASM International: Analyst and Investor

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

31

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Technology Seminar at 23 (July 11, 2012),

http://www.asm.com/Downloads/2012_Semicon_West_technology_investor_presentation.pdf

(last visited Feb. 15, 2018).



88.     On information and belief, Defendants have been aware of the '023 patent and its infringement since at least as early as July 10, 2012.

89.     On information and belief, the ASM Defendants indirectly infringe the '023 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to the A412 batch vertical furnace system.  At least this system, as provided by Defendants to their customers and used as intended and instructed, infringes the '023 patent.  Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system, and are continuing to do so, to customers with the specific intent to actively encourage them to use

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

32

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system in the United States in a manner that Defendants know to be infringing.

90.    For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the A412 batch vertical furnace system to customers and intending them to use the A412 batch vertical furnace system to practice the claimed method; advertising the A412 batch vertical furnace system in the United States to encourage customers to use the patented invention of the '023 patent by operating the A412 batch vertical furnace system in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the A412 batch vertical furnace system for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the A412 batch vertical furnace system.

91.    More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system."  *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018).  On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products.  *See id.*  For example, the Pulsar XP ALD product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "thorough understanding of the A412™ and its maintenance procedures."  *See* ASM A412 Part 2 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P2.pdf (last visited Feb. 15, 2018); *see also* ASM A412 Part 1 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P1.pdf (last visited Feb. 1, 2018); ASM, Training – By System, A412, https://training2.asm.com/training/trainingbysys.php?product=A412 (last visited Feb. 15, 2018) (listing A412 training courses titled "15 Day Custom," "Equipment Training Part 1," and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

33

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

"Equipment Training Part 2").

92. In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least Defendants' A412 batch vertical furnace system. These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' A412 batch vertical furnace system, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications. These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment. On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Defendants' A412 batch vertical furnace system, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation. On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products, including at least Defendants' A412 batch vertical furnace system, at customer sites. On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

93. Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs." *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018). Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

34

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 8, 2018).  Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment."  *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 1, 2018).  The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

35

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

confidence in the product's performance and compatibility with the customer's requirements to place an order." *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018). Further, the ASM Defendants maintain regional sales and service offices in the U.S., including the "Regional Sales/Service Office" located in San Jose, CA, for sale and service of the Accused Products. *See id.* at 176.

94.    On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '023 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system. Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '023 patent.

95.    Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 1 the '023 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America. On information and belief, such active steps include, but are not limited to, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components. On information and belief, Defendant ASM International knew or should have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

36

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

known that such activities induce Defendant ASM America to infringe at least claim 1 of the '023 patent since at least July 10, 2012.

96.    On information and belief, Defendant ASM International also contributes to the infringement of at least claim 1 of the '023 patent by Defendant ASM America.  Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts that comprise the substrate processing apparatus in the manner described above.  The Accused Products, components, and related parts are especially adapted for use in the infringing products, and they have no substantial non-infringing uses.  On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 1 of the '023 patent since at least July 10, 2012.

97.    As a result of Defendants' infringement of the '023 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

98.    Defendants' acts of infringement of the '023 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 10, 2012.  Defendants' acts constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

99.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## COUNT V

## Infringement of the '018 Patent

100.    HiKE incorporates paragraphs 1-99 above by reference.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

37

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

101.    The '018 patent relates to a substrate processing device having a heating member capable of performing an unequal heating in a substrate surface so that warpage of a substrate can be effectively prevented. *See* Ex. E, '018 patent at Abstract, 2:50-54, claim 14.

102.    HiKE is the owner, by assignment, of all rights, title and interest in the '018 patent, including the right to recover damages for past infringement.

103.    Defendants have infringed and continue to infringe at least claim 14 the '018 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the ASM Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products. Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

104.    For example, the Accused Products, including at least Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, contain each element of and infringes at least claim 14 of the '018 patent, which recites the following:

14. A substrate processing apparatus, comprising:

a heating member which heats a substrate, and which is capable of performing an unequal heating in a substrate surface; and

a controller which controls heating of said substrate at least between a first temperature and a second temperature which is different from the first temperature, and which controls said heating member such that a temperature deviation in said substrate surface is maintained within a range such that no warpage of the substrate occurs,

wherein a temperature deviation value in the substrate surface at said first temperature and a temperature deviation value in the substrate surface at said second temperature are different from each other.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

38

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

105.    On information and belief, the Accused Products, including at least Defendants' Pulsar XP ALD system (shown below), Eagle XP8 PEALD system (shown below), Dragon XP8 PECVD system (shown below), and Epsilon system (shown below as the Defendants' Epsilon 2000 and Epsilon 3200 products) products, each system is a substrate processing apparatus that includes a heating member, which heats a substrate and is capable of performing an unequal heating in a substrate surface.  For example, on information and belief, the Epsilon Epitaxy product (shown below) has "[p]recise temperature control across the wafer surface, which enables highly uniform silicon layers."  Epsilon Epitaxy, ASM, http://www.asm.com/solutions/products/epitaxy-products/epsilon-epitaxy (last visited Feb. 15, 2018).  Moreover, on information and belief, the Pulsar XP ALD product (shown below) "works by exposing the heated wafer to controlled pulses of process gases."  *See, e.g.*, Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018); *see also* Dragon XP8 PECVD, ASM, http://www.asm.com/solutions/products/plasma-enhanced-chemical-vapor-deposition/dragon-xp8; Eagle XP8 PEALD, ASM, http://www.asm.com/solutions/products/plasma-enhanced-ald/eagle-xp8-peald ("The Eagle® XP8 is the highest throughput single wafer PEALD tool in the industry.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

39

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT







MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

106.    On information and belief, the Accused Products, including at least Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, include a controller that controls heating of the substrate at least between a first temperature and a second temperature, and controls a heating member such that a temperature deviation in the substrate surface is maintained within a range such that no warpage of the substrate occurs. *See, e.g.*, ASM XP8 Maintenance Training Course Overview, https://training2.asm.com/training/include/desc/XP8-Part2.pdf (Training to "[l]ocate the controllers," "[i]dentify and describe the temperature control components (tool & MMI)," and "how to perform heating up and cooling down of sub-heaters." For example, on information and belief, the Epsilon Epitaxy product (shown below) has "[p]recise temperature control across the wafer surface, which enables highly uniform silicon layers." Epsilon Epitaxy, ASM, http://www.asm.com/solutions/products/epitaxy-products/epsilon-epitaxy (last visited Feb. 15, 2018). Moreover, on information and belief, the Pulsar XP ALD product (shown below) "works by exposing the heated wafer to controlled pulses of process gases." *See, e.g.*, Pulsar XP ALD, ASM, http://www.asm.com/solutions/products/atomic-layer-deposition-products/pulsar-xp-ald (last visited Feb. 15, 2018); *see also* Dragon XP8 PECVD, ASM, http://www.asm.com/solutions/products/plasma-enhanced-chemical-vapor-deposition/dragon-xp8; Eagle XP8 PEALD, ASM, http://www.asm.com/solutions/products/plasma-enhanced-ald/eagle-xp8-peald ("The Eagle® XP8 is the highest throughput single wafer PEALD tool in the industry."). On information and belief, in Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, a temperature deviation value in the substrate surface at the first temperature and a temperature deviation value in the substrate surface at the second temperature are different from each other.

107.    On information and belief, Defendants have been aware of the '018 patent and its infringement since at least July 10, 2012.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

41

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

108.    On information and belief, the ASM Defendants indirectly infringe the '018 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, that embody or use the inventions claimed in the '018 patent.  At least the Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, as provided by the ASM Defendants to their customers and used as intended and instructed, infringe the '018 patent.  Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Products, including but not limited to Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, in the United States in a manner that Defendants know to be infringing.

109.    For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Accused Products to customers and intending them to use the Accused Products to practice the claimed method; advertising the Accused Products in the United States to encourage customers to use the patented invention of the '018 patent by operating the Accused Products in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Accused Products for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Accused Products.

110.    More specifically, the ASM Defendants "offer complete programs for all of [their]

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

42

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018).  On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products.  *See id.*; *see also* ASM Eagle XP Training Course Overview, https://training2.asm.com/training/include/desc/EagleXP-P1-P2.pdf (last visited Feb. 15, 2018); ASM EmerALD Training Course Overview, https://training2.asm.com/training/include/desc/EmerALD-P1-P2.pdf (last visited Feb. 15, 2018); ASM Epsilon 2000 Training Course Overview P1/P2, https://training2.asm.com/training/include/desc/E20-P1.pdf (last visited Feb. 15, 2018), https://training2.asm.com/training/include/desc/E20-P2.pdf (last visited Feb. 15, 2018); ASM Intrepid Training Course, https://training2.asm.com/training/trainingbysys.php?product=Intrepid PM (last visited Feb. 8, 2018); ASM Polygon 8300 with Pulsar 3000 Training Course Overview, https://training2.asm.com/training/include/desc/P83-P2.pdf (last visited Feb. 8, 2018); ASM Pulsar 3000 Training Course Overview, https://training2.asm.com/training/include/desc/PulsarGH-P1-P2.pdf (last visited Feb. 15, 2018), https://training2.asm.com/training/include/desc/PulsarXP-P1-P2.pdf (last visited Feb. 15, 2018). For example, the XP8 product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "in-depth coverage and hands-on practice in learning the individual functions associated with XP8™ system user interface." *See* ASM XP8 Part 1 Maintenance Training: Course Overview, https://training2.asm.com/training/include/desc/XP8-Part1.pdf (last visited Feb. 15, 2018); *see also* ASM XP8 Part 2 Maintenance Training: Course Overview, https://training2.asm.com/training/include/desc/XP8-Part2.pdf (last visited Feb. 15, 2018).

111.   In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least Defendants' Pulsar XP ALD system, Eagle XP8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

43

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products. These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications. These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment. On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation. On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products at customer sites for at least Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products. On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

112.    Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs." *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018). Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

44

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs). The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S. *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018). Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment." *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 15, 2018). The ASM Defendants also actively and knowingly encourage customers to use one or more of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order." *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018). Further, the ASM Defendants maintain regional sales and service offices in the U.S., including the "Regional Sales/Service Office" located in San Jose, CA, for sale and service of the Accused Products. *See id.* at 176.

113. On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '018 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to Defendants' Pulsar XP ALD system, Eagle XP8 PEALD system, Dragon XP8 PECVD system, Epsilon 2000 single wafer epitaxy system, and Epsilon 3200 single wafer epitaxy system products. Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not staple articles of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for the products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '018 patent.

114. Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 14 the '018 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America. On information and belief, such active steps include, but are not limited to, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

46

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components. On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 14 of the '018 patent since at least July 10, 2012.

115. On information and belief, Defendant ASM International also contributes to the infringement of at least claim 14 of the '018 patent by Defendant ASM America. Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts that comprise the substrate processing apparatus in the manner described above. The Accused Products, components, and related parts are especially adapted for use in the infringing products, and they have no substantial non-infringing uses. On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 14 of the '018 patent since at least July 10, 2012.

116. As a result of Defendants' infringement of the '018 patent, HiKE has suffered and continues to suffer damages. HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

117. Defendants' acts of infringement of the '018 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent. On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 10, 2012. Defendants' acts, since at least July 10, 2012, constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

118. Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## COUNT VI

### Infringement of the '988 Patent

119.    HiKE incorporates paragraphs 1-118 above by reference.

120.    HiKE is the owner, by assignment, of all rights, title and interest in the '988 patent, including the right to recover damages for past infringement.

121.    The '988 patent relates to a method of manufacturing a semiconductor device capable of improving defects of conventional CVD and ALD methods in order to realize a high film-formation rate. *See* Ex. F, '988 patent at Abstract.  The method includes forming a first layer including a first element being able to become solid state by itself on a substrate by supplying a gas containing the first element into a process vessel under conditions that a CVD reaction occurs, and forming a second layer including the first element and a second element that is unable to become solid state by itself to modify the first layer by supplying a gas containing the second element into the process vessel. *Id.*

122.    The ASM Defendants have infringed and continue to infringe the '988 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products.  The ASM Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

123.    For example, the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, have, since at least 2014 and 2016, respectively, been configured and operated by ASM to perform the method of at least claim 1 of the '988 patent, which recites the following:

A method of manufacturing a semiconductor device, comprising:

(a) forming a first layer including a first element being able to become solid state by itself on a substrate by supplying a gas containing the first element into a process vessel accommodating the substrate under a condition where a CVD reaction is caused;

PLAINTIFF HITACHI KOKUSAI ELECTRIC INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

(b) modifying the first layer by supplying a gas containing a second element being unable to become solid state by itself into the process vessel to form a second layer including the first element and the second element; and

(c) performing a cycle comprising the steps (a) and (b) at least once to form a thin film having a predetermined thickness and including the first element and the second element

124.    On information and belief, ASM performs a method of manufacturing a semiconductor device using the A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, illustrated below.  *See* Press Release, "ASM International N.V. introduces New High Productivity Epitaxy, PEALD and PECVD Systems," ASM (July 10, 2012), *available at* https://www.sec.gov/Archives/edgar/data/351483/000119312512300257/d378031dex991.htm (last visited Feb. 13, 2018) ("ASM International N.V. and its subsidiaries design and manufacture equipment and materials used to produce semiconductor devices").  The A412 is used by ASM in the manufacturing of a semiconductor device.  *See* Advance Vertical Furnace, ASM, http://www.asm.com/solutions/products/low-pressure-chemical-vapor-deposition-and-diffusion-products/advance-vertical-furnace (last visited Feb. 15, 2018).  The A412 (shown below) is a "batch vertical furnace optimized to meet the needs of advanced semiconductor applications." *Id.* The XP8 likewise is used by ASM in semiconductor manufacturing.  *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

49

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT






125.    Additionally, on information and belief, ASM's infringing method for the A412 comprises a step (a) of forming a first layer including a first element being able to become solid state by itself on a substrate by supplying a gas containing the first element into a process vessel accommodating the substrate under a condition where a CVD reaction is caused.  For example, on information and belief, ASM's method is used to manufacture a semiconductor device by forming a first layer including a first element, such as aluminum (Al), on a substrate, by supplying the gas containing the first element, such as trimethylaluminum (Al(CH3)3, abbreviation: TMA), gas into

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

50

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

the A412's processing chamber having the substrate under CVD processing conditions. The '988 patent recites a preferred embodiment wherein "[a]s an aluminum-containing gas, for example, trimethylaluminum (Al(CH$_3$)$_3$, abbreviation: TMA) gas may be used." Ex. F, '988 patent at 19:35-36.

126.    On information and belief, ASM's infringing method for the A412 comprises a step (b) of modifying the first layer by supplying a gas containing a second element being unable to become solid state by itself into the process vessel to form a second layer including the first element and the second element. For example, on information and belief, ASM's method is used to manufacture a semiconductor device by modifying the first layer (as described above) by supplying a gas containing a second element, such as ammonia (NH3) gas, into the A412's processing chamber to form a second layer, such as AlN, including the first element (aluminum) and the second element (nitrogen). The '988 patent recites the use of NH3 gas as a gas containing a second element in a preferred embodiment. *See* Ex. F, '988 patent at 15:58-16:56.

127.    Finally, on information and belief, ASM's infringing method for the Accused Products, including at least Defendants' A412, comprises performing a cycle comprising the steps (a) and (b), as described above, at least once to form a thin film having a predetermined thickness and including the first element and the second element. For example, on information and belief, ASM's method is used to manufacture a semiconductor device in its A412 processing chamber using steps (a) and (b) to create a thin film, such as AlN, on a substrate having a predetermined thickness, such as 125 Angstroms.

128.    On information and belief, ASM's infringing method for the XP8 system also comprises a step (a) of forming a first layer including a first element being able to become solid state by itself on a substrate by supplying a gas containing the first element into a process vessel accommodating the substrate under a condition where a CVD reaction is caused. For example, on information and belief, ASM's method is used to perform this step at least in its "high-temperature ALD SiO" process for the XP8 system. *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016),

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

51

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018).  Additionally, on information and belief, the process used for the A412 described above may be adapted for use in the XP8.

129.    Additionally, on information and belief, ASM's infringing method for the XP8 also comprises a step (b) of modifying the first layer by supplying a gas containing a second element being unable to become solid state by itself into the process vessel to form a second layer including the first element and the second element.  For example, on information and belief, ASM has used this method to perform this step at least in its "high-temperature ALD SiO" process for the XP8 system.  *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018).  The '988 patent recites a preferred embodiment wherein, under certain conditions, "a silicon-containing gas and an oxygen-containing gas may be used as a first element-containing gas and a second element-containing gas, respectively, to form a silicon oxide (SiO) film."  *See* Ex. F, '988 patent at 19:21-24.  Additionally, on information and belief, the infringing process used for the A412 described above may be adapted for use in the XP8.

130.    Finally, on information and belief, ASM's infringing method for the XP8 also comprises performing a cycle comprising the steps (a) and (b), as described above, at least once to form a thin film having a predetermined thickness and including the first element and the second element.  For example, on information and belief, ASM's method is used to perform this step at least in its "high-temperature ALD SiO" process for the XP8 system.  *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018).  Additionally, on information and belief, the process used for the A412, as described above, may be adapted for use in the XP8.

131.    On information and belief, Defendants have been aware of the '988 patent and its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

52

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

infringement since at least as early as October 17, 2014.

132.    On information and belief, the ASM Defendants indirectly infringe the '988 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products. At least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, as provided by the ASM Defendants to their customers and used as intended, instructed and encouraged by the ASM Defendants, infringe the '988 patent. Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, and are continuing to do so, to customers with the specific intent to actively encourage them to use one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, in the United States in a manner that Defendants know to be infringing.  On information and belief, the ASM Defendants specifically encouraged their customers to use the infringing ASM processes in connection with the Accused ASM Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, by providing publication and participating in conferences where they demonstrated, explained, and encouraged use of these infringing ASM processes.

133.    For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Accused Products to customers and intending them to use the Accused Products to practice the claimed method; advertising the Accused Products in the United States to encourage customers to use the patented invention of the '988 patent by operating the Accused Products in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Accused

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

53

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Products for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Accused Products.

134. More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018). On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products. *See id.* For example, the XP8 product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "in-depth coverage and hands-on practice in learning the individual functions associated with XP8™ system user interface." *See* ASM XP8 Part 1 Maintenance Training: Course Overview, https://training2.asm.com/training/include/desc/XP8-Part1.pdf (last visited Feb. 15, 2018); *see also* ASM XP8 Part 2 Maintenance Training: Course Overview, https://training2.asm.com/training/include/desc/XP8-Part2.pdf (last visited Feb. 15, 2018). Additionally, the A412 product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers "with an introduction and basic understanding of operating and maintaining the A412." *See* A412 Part 1 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P1.pdf (last visited Feb. 15, 2018); *see also* A412 Part 2 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P2.pdf (last visited Feb. 15, 2018).

135. In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products. These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8

PECVD system products, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, meet the customer's technical specifications. These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment. On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation. On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, at customer sites. On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

136. Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs." *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018). Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods" (*see*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

55

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018).  Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment."  *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 15, 2018).  The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order."  *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

56

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Further, the ASM Defendants maintain regional sales and service offices in the U.S. for sale and service of the Accused Products. *See id.* at 176.

137.   On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '988 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products. Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use. For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for such products' use as a component of a patented system and/or apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '988 patent.

138.   Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 1 the '988 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America. On information and belief, Defendant ASM International directs or controls Defendant ASM America's performance of claimed steps by taking active steps that include, but are not limited to, instructing Defendant ASM American to use the Accused Product, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components. On information and belief, the benefit to Defendant ASM America is a product to sell to customers for profit, and Defendant ASM International conditions Defendant ASM

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

America's receipt of the product and subsequent sale to customers on taking steps of the claimed method.  On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 1 of the '988 patent since at least October 17, 2014.

139.    On information and belief, Defendant ASM International also contributes to the infringement of at least claim 1 of the '988 patent by Defendant ASM America.  Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts for performing the claimed method in the manner described above.  The Accused Products, components, and related parts are especially adapted for the infringing process, and they have no substantial non-infringing uses.  On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim 1 of the '988 patent since at least October 17, 2014.

140.    As a result of Defendants' infringement of the '988 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

141.    Defendants' acts of infringement of the '988 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least October 17, 2014.  Defendants' acts constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

142.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

58

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

## COUNT VII

### Infringement of the '316 Patent

143.    HiKE incorporates paragraphs 1-142 above by reference.

144.    HiKE is the owner, by assignment, of all rights, title and interest in the '316 patent, including the right to recover damages for past infringement.

145.    The '316 patent relates to a method of manufacturing a semiconductor device, the method comprising forming a thin film on a substrate by repeating a cycle a plurality of times. The cycle comprises forming a first layer and forming a second layer.  In the process of forming the first layer, a gas containing a first element is supplied to the substrate to form the first layer including the first element and having a thickness of less than one atomic layer or several atomic layers on the substrate.  *See* Ex. G, '316 patent at claim 1.  In the process of forming the second layer, a gas containing a second element is supplied to the first layer to cause a part of the first layer to react with the gas containing the second element for modifying the first layer and thus forming the second layer including the first and second elements.  *Id.*  The modification reaction of the first layer is not saturated in the process of forming the second layer.  *Id.*

146.    The ASM Defendants have infringed and continue to infringe the '316 patent in this District and throughout the United States by making, using, importing, selling, and/or offering for sale one or more of the Accused Products, including but not limited to the A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products.  The ASM Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

147.    For example, the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, have, since at least 2014 and 2016, respectively, been configured and operated by ASM to perform the method of at least claim 1 of the '316 patent, which recites the following:

A method of manufacturing a semiconductor device, the method comprising

forming a thin film having a predetermined thickness and a predetermined composition on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

59

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

a substrate, the thin film comprising a first element and a second element different from the first element, by repeating a cycle a plurality of times, the cycle comprising:

(a) forming a first layer comprising the first element and having a thickness of several atomic layers or less than one atomic layer on the substrate by supplying a gas containing the first element into a process vessel accommodating the substrate; and

(b) forming a second layer comprising the first element and the second element by supplying a gas containing the second element into the process vessel to modify the first layer without saturating a modifying reaction of the first layer by the gas containing the second element.

148.    On information and belief, ASM's method is used to manufacture a semiconductor device employing the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products (shown below). *See* Press Release, "ASM International N.V. introduces New High Productivity Epitaxy, PEALD and PECVD Systems," ASM  (July 10, 2012), *available at* https://www.sec.gov/Archives/edgar/data/351483/000119312512300257/d378031dex991.htm (last visited Feb. 13, 2018) ("ASM International N.V. and its subsidiaries design and manufacture equipment and materials used to produce semiconductor devices."). The A412 is used in the manufacturing of a semiconductor device. *See* Advance Vertical Furnace, ASM, http://www.asm.com/solutions/products/low-pressure-chemical-vapor-deposition-and-diffusion-products/advance-vertical-furnace (last visited Feb. 15, 2018). The A412 (shown below) is a "batch vertical furnace optimized to meet the needs of advanced semiconductor applications." *Id.* The XP8 likewise used by ASM in semiconductor manufacturing. *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018). The Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

60

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

have been configured by ASM to form a thin film having a predetermined thickness and a predetermined composition on a substrate, the thin film comprising a first element and a second element different from the first element, by repeating a cycle a plurality of times.  For example, on information and belief, ASM's method is used to manufacture a semiconductor device in its A412 processing chamber by creating a thin film, such as AlN, on a substrate having a predetermined thickness, such as 125 Angstroms.

**A412 PLUS**

• maximise throughput
• minimal floor space
• dual boat operation
• large WIP station

### ›XP8-DCM

• High productivity single wafer tool for both PEALD and PECVD applications
• Accommodates up to 8 chambers by DCM
• PEALD and PECVD can be integrated on the same platform

 

**DCM** (Dual Chamber Module)

149.    Additionally, on information and belief, ASM's infringing method as used in the Accused Products, including at least the A412, comprises a step (a) of forming a first layer comprising a first element and having a thickness of several atomic layers or less than one atomic

layer on the substrate by supplying a gas containing the first element into a process vessel accommodating the substrate. For example, on information and belief, ASM's method is used to manufacture a semiconductor device by forming a first layer comprising a first element, such as aluminum (Al), and having a thickness of several atomic layers or less than one atomic layer on a substrate by supplying a gas containing the first element, such as trimethylaluminum (Al(CH$_3$)$_3$, abbreviation: TMA) gas, into the A412's processing chamber. The '316 Patent recites a preferred embodiment wherein "[a]s an aluminum-containing gas, for example, trimethylaluminum (Al(CH$_3$)$_3$, abbreviation: TMA) gas may be used." Ex. G, '316 patent at 17:39-40.

150.    Additionally, on information and belief, ASM's infringing method for the A412 comprises a step (b) of forming a second layer comprising the first element and a second element by supplying a gas containing the second element into the process vessel to modify the first layer without saturating a modifying reaction of the first layer by the gas containing the second element. For example, on information and belief, ASM's method is used to manufacture a semiconductor device by supplying a gas containing a second element, such as ammonia (NH3) gas, into the A412's processing chamber to form a second layer (AlN) including both the first element (aluminum) and the second element (nitrogen). Moreover, on information and belief, the modifying reaction caused by supplying the gas containing the second element is not saturating in ASM's method. The '316 patent recites the use of NH3 gas as a gas containing a second element in a preferred embodiment. *See* Ex. G, '316 Patent at 14:5-15:36.

151.    On information and belief, ASM's infringing method for the XP8 system also comprises a step (a) of forming a first layer comprising the first element and having a thickness of several atomic layers or less than one atomic layer on the substrate by supplying a gas containing the first element into a process vessel accommodating the substrate. For example, on information and belief, ASM's method is used to perform this step at least in its "high-temperature ALD SiO" process for the XP8 system. *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

62

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

(last visited Feb. 15, 2018). Additionally, on information and belief, the infringing process used for the A412 described above may be adapted for use in the XP8.

152. Additionally, on information and belief, ASM's infringing method for the XP8 also comprises a step (b) of modifying the first layer by supplying a gas containing a second element being unable to become solid state by itself into the process vessel to form a second layer including the first element and the second element. For example, on information and belief, ASM's method is used to perform this step at least in its "high-temperature ALD SiO" process for the XP8 system. *See* "Advanced Chip Manufacturing With New Materials," ASM International Analyst and Investor Technology Seminar (July 3, 2016), www.asm.com/Downloads/2016_Semicon_West_investor_technology_seminar_presentation.pdf (last visited Feb. 15, 2018). The '316 Patent recites a preferred embodiment wherein, under certain conditions, "a silicon-containing gas and an oxygen-containing gas may be used as a first element-containing gas and a second element-containing gas, respectively, to form a silicon oxide (SiO) film." Ex. G, '316 patent at 17:25-28. Additionally, on information and belief, the process used for the A412 described above may be adapted for use in the XP8.

153. On information and belief, Defendants have been aware of the '316 patent and its infringement since at least as early as July 27, 2016.

154. On information and belief, the ASM Defendants indirectly infringe the '316 patent under 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products. At least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, as provided by the ASM Defendants to their customers and used as intended, instructed and encouraged by the ASM Defendants, infringe the '316 patent. Defendants sold and/or offered for sale one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, and are continuing to do so, to customers with the specific

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

63

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

intent to actively encourage them to use one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, in the United States in a manner that Defendants know to be infringing. On information and belief, the ASM Defendants specifically encouraged their customers to use the infringing ASM processes in connection with the Accused ASM Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, by providing publication and participating in conferences where they demonstrated, explained, and encouraged use of these infringing ASM processes.

155. For example, among other things, on information and belief, the ASM Defendants' acts of inducement include: providing the Accused Products to customers and intending them to use the Accused Products to practice the claimed method; advertising the Accused Products in the United States to encourage customers to use the patented invention of the '316 patent by operating the Accused Products in accordance with the ASM Defendants' specifications, installation materials, and instruction materials; and encouraging customers to communicate directly with the ASM Defendants' representatives and providing information about the Accused Products for purposes of customer support and training, technical assistance, design, product and part replacement, sales, and marketing of the Accused Products.

156. More specifically, the ASM Defendants "offer complete programs for all of [their] products" with "theory and hands-on sessions" that "assist [customers] until [they] become comfortable and confident with [their] wafer processing system." *See, e.g.*, ASM Customer Training, http://www.asm.com/support/customer-training (last visited Feb. 15, 2018). On information and belief, the ASM Defendants previously provided "product training classes" at ASM sites for the Accused Products. *See id.* For example, the XP8 product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers with "in-depth coverage and hands-on practice in learning the individual functions associated with XP8™ system user interface." *See* ASM XP8 Part 1 Maintenance Training: Course

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

64

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

Overview, https://training2.asm.com/training/include/desc/XP8-Part1.pdf (last visited Feb. 15, 2018); *see also* ASM XP8 Part 2 Maintenance Training: Course Overview, https://training2.asm.com/training/include/desc/XP8-Part2.pdf (last visited Feb. 15, 2018). Additionally, the A412 product training class has included "[i]nformal lectures, demonstrations and practical exercises" that provide customers "with an introduction and basic understanding of operating and maintaining the A412." *See* A412 Part 1 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P1.pdf (last visited Feb. 15, 2018); *see also* A412 Part 2 Equipment Training: Course Overview, https://training2.asm.com/training/include/desc/A412-P2.pdf (last visited Feb. 15, 2018).

157.    In addition, on information and belief, the ASM Defendants also engage in extensive communications and onsite visits with customers in the course of selling and offering to sell the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products. These communications and visits include, on information and belief, exchanging information with potential customers concerning their product needs and the capabilities of the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, as well as demonstrations of the Accused Products to assure the customer that the ASM Defendants' Accused Products meet the customer's technical specifications. These communications and visits also include, on information and belief, the installation of equipment at customer sites to facilitate evaluation of the Accused Products before, during, and/or after customers have made a purchase commitment. On information and belief, the ASM Defendants further support the installation of the Accused Products, including at least Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, by having engineers and other representatives travel to a customer site or otherwise assist the customer to set-up the Accused Product and make them ready for use and operation. On information and belief, the ASM Defendants perform ongoing support and maintenance of the Accused Products, including at least Defendants' A412 batch vertical furnace

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products, at customer sites. On information and belief, the foregoing activities by the ASM Defendants result in the Accused Products being configured to perform and function in a manner that infringes HiKE's asserted patents.

158.    Additionally, the ASM Defendants "offer a full range of support options worldwide" and "offer standard and tailored service and spares programs."  *See* ASM Technical Service and Spares Support, http://www.asm.com/support/technical-service-and-spares-support (last visited Feb. 15, 2018).  Such programs include the PerforMAX: Bank of Hours Program that provides customers "with a fixed number of 'banked' ASM service labor hours" to be used "for tasks such as repair and qualification, on-the-job training, tool relocation and preventative maintenance services" for the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-bank-of-hours-program); the PerforMAX: Engineer On-Site Program that provides "on-site operational and support expertise for your ASM equipment," including the Accused Products, by "measuring and managing system performance metrics, and sharing equipment and best-known wafer processing methods"  (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-engineer-on-site-program); the PerforMAX: Full Service Program (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-full-service-program); the PerforMAX: Performance Maintenance Program that "enables [a customer] to become an expert in the services needed to deliver high productivity from [their] ASM processing equipment," including the Accused Products (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-performance-maintenance-program); the PerforMAX: Productivity Enhancement Program that "utilizes ASM field and factory expertise to perform site evaluations and to analyze [customers'] site and equipment performance" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-service-programs/performax-productivity-enhancement-program); and the PerforMAX: Consumables

PLAINTIFF HITACHI KOKUSAI ELECTRIC INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Consignment Program that provides customers "with on-site stocking of genuine ASM consumable parts" (*see* http://www.asm.com/support/technical-service-and-spares-support/performax-spares-programs).  The ASM Defendants further provide customers with "Field Support Services" to meet "local service and support requirements" for the Accused Products at locations across the globe, including the U.S.  *See* ASM Field Support Services, http://www.asm.com/support/field-support-services (last visited Feb. 15, 2018).  Moreover, the ASM Defendants "offer equipment product performance upgrades" for the Accused Products to "extend the life and investment of [customers'] equipment."  *See* ASM Product Performance Upgrade, http://www.asm.com/support/product-performance-upgrade (last visited Feb. 15, 2018).  The ASM Defendants also actively and knowingly encourage customers to use one or more of the Accused Products by way of "product presentations and demonstrations" with opportunities to "evaluat[e] equipment on site," thereby encouraging customers to "reach[] a sufficient level of confidence in the product's performance and compatibility with the customer's requirements to place an order."  *See* ASM 2016 Statutory Annual Report at 98, http://www.asm.com/Downloads/2016_Statutory_annual_report.pdf (last visited Feb. 15, 2018).  Further, the ASM Defendants maintain regional sales and service offices in the U.S. for sale and service of the Accused Products.  *See id.* at 176.

159.    On information and belief, Defendants have also contributed to and/or are contributing to the infringement of the '316 patent by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, including but not limited to Defendants' A412 batch vertical furnace system, Eagle XP8 PEALD system, and Dragon XP8 PECVD system products.  Defendants have made and/or sold such products with knowledge that they are especially designed for use in a patented system and/or apparatus for use in a patented process and are not a staple article of commerce suitable for substantial non-infringing use.  For example, among other things, on information and belief, Defendants actively and knowingly sell such products and provide customer support, installation and instruction material, and other documentation to customers for such products' use as a component of a patented system and/or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

67

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

apparatus for use in a patented process. On information and belief, Defendants' customers have used and continue to use such products in the United States in this manner and infringed the '316 patent.

160. Moreover, on information and belief, Defendant ASM International takes active steps to induce infringement of at least claim 1 the '316 patent by Defendant ASM America, knowing that those steps will induce, encourage, and facilitate direct infringement by Defendant ASM America. On information and belief, Defendant ASM International directs or controls Defendant ASM America's performance of claimed steps by taking active steps that include, but are not limited to, instructing Defendant ASM American to use the Accused Product, manufacturing the Accused Products and their components, configuring the Accused Products and their components, providing Defendant ASM America with instructions on use of the Accused Products and their components, encouraging Defendant ASM America to make and/or use the Accused Products and their components, selling the Accused Product and their components. On information and belief, the benefit to Defendant ASM America is a product to sell to customers for profit, and Defendant ASM International conditions Defendant ASM America's receipt of the product and subsequent sale to customers on taking steps of the claimed method. On information and belief, Defendant ASM International knew or should have known that such activities induce Defendant ASM America to infringe at least claim 1 of the '316 patent since at least July 27, 2016.

161. On information and belief, Defendant ASM International also contributes to the infringement of at least claim 1 of the '316 patent by Defendant ASM America. Acts by Defendant ASM International that contribute to the infringement by Defendant ASM American include providing the Accused Products, components, and related parts for performing the claimed method in the manner described above. The Accused Products, components, and related parts are especially adapted for the infringing process, and they have no substantial non-infringing uses. On information and belief, Defendant ASM International knew or should have known that such activities contribute to Defendant ASM America's infringement of at least claim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

68

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

1 of the '316 patent since at least July 27, 2016.

162.    As a result of Defendants' infringement of the '316 patent, HiKE has suffered and continues to suffer damages.  HiKE is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

163.    Defendants' acts of infringement of the '316 patent herein have been committed and are being committed with full knowledge of HiKE's rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent, and they knew or should have known of this infringement since at least July 27, 2016.  Defendants' acts, since at least July 27, 2016, constitute willful and deliberate infringement, entitling HiKE to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

164.    Defendants' acts of infringement have caused and will continue to cause irreparable harm to HiKE for which there is no adequate remedy at law, thereby entitling HiKE to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, HiKE prays that this Court enters judgment and provides relief as follows:

A.    That Defendants have infringed and are infringing the Asserted Patents;

B.    That Defendants have induced and are inducing infringement of the Asserted Patents;

C.    That Defendants have contributed to and are contributing to infringement of the Asserted Patents;

D.    That the Asserted Patents are valid and enforceable;

E.    That Defendants, their officers, agents, and employees, and those persons in active concert of participation with any of them, and their successors and assigns be preliminarily and permanently enjoined from infringement of the Asserted Patents, including but not limited to an injunction against making, using, offering to sell, selling within the United States, and importing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

69

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

into the United States, products covered by the Asserted Patents;

F.     For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

G.     That Defendants be ordered to account for and pay to HiKE the damages resulting from Defendants' infringement of the Asserted Patents, including lost profits, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

H.     That this action be adjudged an exceptional case and HiKE be awarded its attorneys' fees, expenses and costs in this action pursuant to 35 U.S.C. § 285; and

I.     That HiKE be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

### JURY DEMAND

HiKE demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 16, 2018

/s/ Michael J. Lyons
Michael J. Lyons
Jason E. Gettleman
Jacob J.O. Minne
Karon N. Fowler
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:     +1.650.843.4001

Jeffrey E. Ostrow
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel: +1.650.251.5000
Fax: +1.650.251.5002

Attorneys for Plaintiff
HITACHI KOKUSAI ELECTRIC INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

PLAINTIFF HITACHI KOKUSAI
ELECTRIC INC.'S FIRST AMENDED
COMPLAINT FOR PATENT
INFRINGEMENT

70